The Honorable Judges of the United States Court of Appeals for the 10th Circuit. Okay, thank you, Counsel and Paul. We'll hear from Counsel in 20-1122 Kenney v. HSBC Bank USA. We'll hear first from Appellant's Counsel, Mr. Burkett. Yes, good morning, Your Honors. May it please the Court, Steve Burkin for the Appellant. I'd like to reserve three minutes, if I might, at the end of argument for rebuttal. So transitioning from the criminal world to the hyper-technical world of bankruptcy, this case is about whether to kick Margaret Kenney out of a Chapter 13 bankruptcy, having made five years of plan payments because she was nine days late with her final plan payment. The facts are not in dispute. Appellant filed Chapter 13 on October 25, 2013. A plan was confirmed in 2014. It was for 60 months or five years. The first plan payment was due 30 days after October 25, 2013, making it November 24, 2013. Thus, the final plan payment under the five years occurred on October 24, 2018. When she filed, she was current with the appellee, HSBC. The confirmed plan contained a goodly amount of taxes owed to the IRS. On November 2, 2018, Appellant made her final plan payment, which meant that she was nine days late as to the plan's completion. By October 24, 2018, she still owed HSBC two months of mortgage payments. I take it that those final payments were cashed and transferred? Yes, Your Honor, that's correct. HSBC did file a motion to dismiss on December 27 of the same year. She cured the missed two payments by February 8 of 2019. So based on HSBC's motion to dismiss, these failings prompted the bankruptcy court to enter an order dismissing the case. And it relied on its own published opinion called Humes. So to the extent that this court is reviewing the bankruptcy court's interpretation of various code sections, we'll get to those sections. We believe the analysis today should be de novo. So we start our argument, Your Honors, with a concession to state the obvious. A debtor cannot confirm a Chapter 13 case that goes beyond five years. A debtor cannot modify a plan that goes beyond five years. But in this case, the debtor never sought to modify or confirm a plan past five years. Let's say hypothetically, Mr. Birkin, that as soon as she had the wreck in November, a week later, she realized, I'm going to have some problems. I've been compliant for four years and 10 months. And the bankruptcy lawyer for Miss Kenny goes into court and says, you know, she's just going to need a little bit more time. All she needs is nine extra days. And so I'm going to file a motion to modify under 1329 to modify the terms of the payment to give a nine day extension. Would the district court or the bankruptcy court have had discretion to grant that motion to modify? Your Honor, I believe not, because 1329 modification of a Chapter 13 plan has the same five year restrictions as 1322 and 1325. So so so this hypothetical debtor goes into court. It tries to do it through formal channels, through emotion. And then you have hypothetically, as in real life, Miss Kenny, who says, well, I'm going to do exactly the same thing. I'm not going to go through the bankruptcy court and file a motion because I know what Mr. Birkin said, he's a good lawyer, that the court will not have discretion to do that. So I'm just going to you know, I'm just going to go to their bank and give them a check or mail a check to them. And you're saying that that is a chore in the first hypothetical. That's a motion to modify in the first motion. The debtor does gets dismissed or converted involuntarily to a Chapter seven. And yet she can do the same thing through an informal. Sure, that she could not do through a motion. And that seems odd. Right. Well, I can see the court's concern. It does seem like not paying on time is a de facto modification. But for the reasons that we argue in our brief, I think we're focusing on the wrong code section. Thirteen oh seven is the code section that deals with defaults, deals with dismissals and conversion. And when we're dealing with disparate code sections, 13, 22, 25, 13, 29, those all deal with the five year limit. When we're talking about the implications of not completing a plan on time, we focus and we move it over to 13 oh seven. And that gives the court an 11 prong unlimited. Actually, it's 11 prong, but it's it can go beyond the 11 prongs test, so to speak, up to the court's discretion, whether or not it rises to the level of material default. I mean, 13 oh seven allows a court discretion. And I'll represent to the court that a lot of times under BAP CPA back in 2005, a lot of the discretion was taken away from these judges. But we kept 13 oh seven. And as I said, the 11 prong test, a trust, a judge can get rid of a case for unreasonable delay by the debtor. It's prejudicial to the creditors. It can a court can dismiss it for materials default by the debtor with respect to terms of a confirmed plan. So I don't think the emphasis should be on that five year limit. I think it had it should rise instead to the level of is this a material fault rising to the level that that causes a case to be dismissed? I don't think it's necessary to raise up the flagpole, the restriction on the five year confirmation or modification limits when there is such, in this case, a minor default. I understand what your argument really is, is that this is not a issue of plan modification. This is an issue of remedy. Yes, Your Honor. And I think we're in good stead. We've got two circuit court cases that back us up. We've got the Klaus case and there's your Murad case. But I think the most telling one is the Holman decision and Holman concludes at 1328. And that's the discharge directs a bankruptcy court to issue what we call a completion discharge. If the debtor has made all the plan payments under the plan and the court and Holman found. Found that 1328 does not include an express requirement that such payments may be made within the five years and then relying on the Klaus third circuit case. It also determines determined that instead within its authority to grant the debtor reasonable grace period to cure. Even though the grace period exceeded five years, the debtor's payment was still under the plan and 1328 then requires a discharge. In fact, Holman goes out of its way to point out the 10th Circuit has says shall means shall. And 1328 has a provision that once that final payment has been tendered, the court shall enter the door, the order of discharge. And not to say it cures all kinds of ills prior to, but pretty close. Once you make that final plan payment, 1328 shall, which is not permissive, I think, kicks in. All right. So, Mr. Birkin, let me ask you. So let's say we agree with everything you just said, both in terms of the definition of under the plan. But earlier in your answer, you said that under 1307 C, the court always has discretion because the court has discretion to grant a discharge. May does not is the opposite of shall in the bankruptcy court always has discretion, whether to dismiss 13 or not to dismiss 13 or to convert to a seven involuntarily or not to. Well, I think what you're telling me now is under 1307 C, the bankruptcy court really doesn't always have discretion because you just got through telling us that under 1328 A, the bankruptcy court upon the ninth day when she tenders those missing payments, the court was obligated to grant a discharge. And so under 1307 C, the bankruptcy court now did not have discretion to dismiss the 13 or to convert to a seven. So aren't those arguments, both with regard to the mandatory nature of 1328 A and the courts inherent, always having discretion under 1307 C, to some extent, those run into conflict with one another. That's a fair statement, Judge. But and if I had to guess, I would say whenever you have shall, it trumps may. And so if you have 1328 that has shall in it, to my mind, 1328 trumps 1307. As a practical matter, we don't get 1307 motions at the end of the plan. We usually get them during the course of the plan for a material default. And it would seem to me in this case, if the payment hadn't been tendered and the issue was raised as it was with HSBC with a motion to dismiss, Judge Brown would have been hard-pressed to find, maybe under abusive discretion standards, that being less than two weeks behind or not failing to make the payment rose to the level of a material default worthy of kicking her out of the plan having made almost five payments. So I do think 1328 is kind of a game-ender. 1307, as a practical matter, doesn't come in at the very end of the plan, but possible. I don't know if that answers the Court's questions. I did want to mention Klaus has a five-prong test. The Brown case, very similar. Klaus, our favorite case out of the Third Circuit, says the question is whether the debtor substantially complied with the plan, the feasibility of completing the plan, payments if permitted, whether allowing a cure would prejudice any creditors, whether the debtor's conduct is excusable or culpable, the availability of relative equities. Brown's very similar. How much longer is it going to take? Has the debtor been diligently making planned payments? How much time has elapsed? Under either the Klaus or the Brown analysis, we just don't think that a car accident that was caused by no fault of her own at the very tail end of the plan, and once again, I point out that HSBC was current when she filed, is grounds enough for the bankruptcy court to have, wanted to initially dismiss the case, but allowed for a conversion. You've mentioned that a number of times. I'm curious whether this is indispensable and critical to your thinking that the need for more time was not her fault, but was something, I mean, I don't quite see how that fits in the analytical framework at all, and yet you obviously think it does, because you a number of times mentioned how important, or you haven't said it was important, but it was important enough for you to mention several times that this was not her fault. Where in all of your analysis do you find relevance to fault? Well, the Klaus decision has that five-prong test, and one of the prongs is whether the debtor's conduct is excusable or culpable. In the underlying Humes case… But tie it to a statute or a reg or something, not a precedent, not a case. Of course, Klaus doesn't control it. Right. Well, 1307 is like one of the last bastions of discretion that the bankruptcy courts are allowed. BAP CPA took so much discretion away from the judges, but as I said, 1307 continued the tradition of at least giving them some discretion. And among the 11 prongs is whether there's a material default again. So it's up to the court's discretion whether or not, in this case, less than two weeks behind. And in the case of the Klaus case, they were 16 days behind. So I think it's hung within the rubric of 1307. Okay. Thank you. Yes, Your Honor. So the Klaus case, as we say, points out that it's permissive under 1307, unlike the limitations of 1329 and 1322 as to the length of plan. We think we're in really good stead, judges. We've got two circuit court cases on our side. We've got Collier on bankruptcy on our side. We've got the Chapter 13 trustee, I believe, filed an amicus brief on our side. We've got a surfeit of lower court cases. I'll cite a few. The harder case, 1322, does not contain a drop-dead provision that mandates dismissal of the case after five years. The Henry case, affirming bankruptcy court denial of motion to dismiss, where the debtor missed payments on the heels of family deaths. Debtor failed to complete payments within the 60 months. The Black case, finding no provision for dismissal of a Chapter 13 where the payments went beyond five years, but otherwise completed during the duration of the confirmed plan. So we think we're in good company. As I said, Collier says under 1322D, focus on the payments provided for, emphasis on provided for, by the plan. If payments are late but the debtor is substantially complying with the plan, the court should allow the plan to be completed within a reasonable time after the stated term. Focusing on HSBC, it points out that the bankruptcy court offered a conversion. We don't think that's a particularly generous offer. To my mind, it wasn't acceptable to the debtor to file a 7. She wanted to complete her 13. Oftentimes, conversion is not an option. In this case, she owed a goodly amount of back taxes. And so there are implications as to interest and penalties that would be abated. So, judges, if I might reserve the rest of my time. Well, you're in deficit. Oh, am I? But I'll tell you what. But I'll give you I'll give you one minute for rebuttal. Thank you, Judge. And Mr. Seiler. You're on mute. Apologies. Good morning, Your Honors. May it please the court. I'm Jamie Seiler. I represent the mortgage lender in this case. It's HSBC Bank as trustee. We responded to the appellant's opening brief in this case after the court asked us to. Initially, we did not file a response in this case because we think that Judge Brown's ruling was sound. And frankly, we don't have an ax to grind with Miss Kenny. We don't have any problems with the position that she has taken in this case, that she tried diligently to make her payments throughout the Chapter 13 plan, that that's a difficult road and that she made it most of the way through her case. But when the court asked us to respond and we did, we looked at the plain reading of the statutes, all of the relevant statutes, and we looked at Judge Brown's ruling. And frankly, they were correct. Mr. Birkin has mentioned a couple of facts that I that frankly, I think the court should focus on and are not as are not as clear as he has indicated. This was not a situation where the debtor was nine days late. This is not a situation that is analogous to the only circuit case that I can find on point. And that was the class decision. The facts in this case are actually quite a bit different. The facts in this case are that the debtor was in material default. Judge Brown, in fact, found that the debtor was in material default. And that's part of her finding. It's frankly, a crucial part of her finding. And we'll talk about materiality in a minute. But I want to go through the facts to show the difference in the factual recitation by Miss Kenny and our version of the facts. Miss Kenny is correct that most of the payments were made over the course of the chapter 13 plan. But the problem comes toward the end. The plan ended in November of twenty eighteen. It started the first payment was due in November of twenty thirteen. And the final payment was due in November of twenty eighteen. Miss Kenny received a notice as the debtors do. And my client, HSBC, received a notice in July and responded to that notice to to tell the trustee and the court whether there was a continuing default or any amounts that still needed to be cured. My client responded in July at the end of July and said there's no default at this point in time. Then immediately after that notice happened, the August payment comes in and that's when the payments stopped. There was a September 1st payment that was due under the plan. That payment was not nine days late. It was not made at all. The payment wasn't short a few dollars. It wasn't nine days late. It was simply not made. Then came October. There was an October 1st payment due. The September 1st payment that was not made is itself a material default. It's not late. It's not short. It's a material default. Then comes October one. The October payment was not made. It wasn't short. It wasn't late. It simply was not made. Then comes November one. The November 1st payment was not made. It wasn't short. It wasn't late. It was not made. The same thing happened in December. Now we're past the five-year period that expires in November. In December, the December 1st payment was not made. It wasn't late. It wasn't short. It was not made. At the end of December, only a few days left until the January payment, my client filed a motion to dismiss under 1307, which, as Judge Bachrach has pointed out, provides this discretion, these 11 factors that we're talking about for dismissal or conversion. My client didn't file a motion saying, hey, you're past the five-year plan limit. My client filed a motion for, quote, material default. The motion to dismiss that was filed cited material default in three separate paragraphs, 11, 12, and 13 of the motion to dismiss all said there's a material default. And that was the basis for the motion. Then comes the January 1st payment. It was not made. Then comes the February 1st payment. It was not made by the deadline. Shortly after February 1st, on February 8th, the debtor made a partial cure payment to catch up on the plan payments that were made. And the reason she did that is because there was a hearing set. There was a hearing set before Judge Brown just a few days later. That's when the payment came in. But at that point, you're well past the five-year limit. You're well past curing something that's a few days late or a minor default. And that really, that materiality distinction and whether this was a material default, therein lies the answer in distinguishing the class case and the Brown case and some of the other cases that have been cited by the debtor in this particular case. The class decision focused on a situation where, and that's the only circuit decision that I can find that's right on point, focused on a situation where the debtors had made all of their payments. The plan in the class case required $174,059 in payments over the course of the five-year plan. And so the court did the math. And the court found, well, actually, they paid $174,100. They actually paid just slightly more than what the plan required in the class case. And it was unfair. The situation was unfair because the trustee made a mistake. The trustee didn't notify the debtors of some additional charges. And at the very end, after the deadlines, approaches the debtor and says, there's more money owed and moves to dismiss. Well, that's not a default in making plan payments. That's a default that was unknown to the debtors and is vastly different than the material default that actually happened in this particular case. I'm sorry to interrupt you, but can I ask you a question? Of course. So even though there was a material default in November and in the subsequent two months, under 1307C, doesn't the bankruptcy judge still have explicit discretion whether or not to dismiss, to grant your motion even after the five-year period ends? That under 1307C, Mr. Bergen's argument is right, isn't it? That 1307C explicitly best discretion whether or not to dismiss the 13th. Absolutely, Your Honor. There is discretion. We didn't file a motion saying that the court must dismiss the case. My client filed a motion saying... Does Brown say something that she did not have discretion to do anything other than to dismiss or convert the bankruptcy, the 13th? When the plan payments weren't made, that is correct. But the judge there, and this goes to Judge Eagle's question about the remedies that were involved. There are multiple remedies that the court can use. And under 1307, the court does have discretion to first dismiss or convert. But there are also other remedies aside from dismissing or converting. Turn to Section 1328 of the Bankruptcy Code. That's the section that Mr. Bergen has cited as requiring a discharge. That section says that the court shall enter a discharge if all of the payments are made under the plan. But therein lies the question. Were all of the payments made, quote, under the plan? And I'd like to go through an analysis of what that means, under the plan. Bill, I want you to do that. But let's say that 1328A, all payments were not made under the plan. And let's say, because of what you're about to tell us, the definition of under the plan. Whatever 1328A means aside, how does that answer the question of whether or not 1307C still granted Judge Brown the discretion not to dismiss the 13th? Because there is another form of discharge available under 1328. What Mr. Bergen is focusing on and what his client wants is what's called a completion discharge. But 1328 also has other remedies. It has a code section already built in for this circumstance. 1328A is the completion discharge. 1328B includes the type of factors and the type of analysis that the class decision went into. 1328B says you can still get a discharge even if you did not make all of your payments. But you have to show that it was not the debtor's fault. The debtor was not culpable in causing the default. That they made the payments, but they could not complete the plan. And so he never filed a motion to do that in this particular case. He never sought a completion discharge because what he's trying instead, or excuse me, he never sought a hardship discharge. Because what he's trying instead is a completion discharge. And the court has never been presented with those facts and that analysis under 1328B to see if a hardship discharge could enter. But that's the alternative remedy. The court can dismiss the case under 1307. The court can convert the case under 1307. And the court doesn't have to do either of those things. The court can say, no, thank you. I don't find it to be a material default. That doesn't mean I have to dismiss the case. The case is still active. And then Ms. Kinney can seek a hardship discharge if she so chooses. So are you saying that 13. We're getting an echo here, Paul, both on Judge Bakarach and myself. Is it my computer? Do the rest of you hear that or not? I hear it. Yeah, I hear it. I hear it, Judge. Judges and counsel, just make sure if you would that your volume isn't too high. It could just be that your speakers, your microphone is picking up what your speakers is blasting out. So if you have it high, maybe just turn it down just a little bit. Okay. So I'm a little, I hadn't, I'm just a little confused. Are you saying that the debtor here, Ms. Kinney could have gotten exactly the relief that she got now under 1328 B. What I'm saying is that she never asked for it. But there is a code section that if the elements of that code section are met, such as the debtor operated in good faith, the debtor tried to make all payments, but could not make all of the payments. And that it was for circumstances beyond the debtor's control and the debtor was not culpable. Those factors, the same types of factors considered in the class case are built into the code in 1328 B. What happened in the class case, if I recall, is the court said, well, that doesn't work. We can't say that the debtor could not make all of the payments because the debtor did make all of the payments. And so the court put aside a 1328 B analysis instead focused on a way to get around the five-year limit with these kinds of factors by calling them out. Well, does 1328 B require that you can't and never could make all the payments? Or does it, would it be satisfied if you said I can't make all the payments in a timely manner? But who knows, I may win the lottery. My Aunt Mabel might die and give me some money. I don't think you would ever make the requirement that they could never, ever pay it. It's got to have a time component to it. In which case, 1328 B sounds like it would be exactly the relief that she got here under discretion. Under 1307. Your Honor, I think there is a time component because this has to be, I believe, requested before the end of the five-year period. 1328 B has to be requested before the expiration of the plan time? Yes, Your Honor. Okay. At any time after the confirmation of the plan and after notice in a hearing, the court may grant a discharge to a debtor that has not completed payments only if the failure to complete the payments is due to circumstances for which the debtor should not be held justly accountable. I don't understand that language to be what you just said. I thought you said 1328 B can only be invoked before the plan time expires. Then you read me some language that I didn't think said that. Your Honor, I may have misunderstood or misspoke. I'm not aware of a requirement to file that kind of a motion before the end of the five-year plan. In fact, you're right. It may come after the plan when they seek that relief. If that's the case, 1328 B provides all the relief that she wants now. It could if it were sought, but these elements have never been addressed because it was never requested. But is there any reason it would not have been granted in this case? I'm not aware, Your Honor, because again, those elements about her culpability have never been discussed. But I mean, would that mean that the social concerns, that is the public policy concerns, that might drive us to a broader construction of 1307 kind of disappear? Because there is an alternative that doesn't require any creative analysis, which is 1328 B. Yes, Your Honor, and that is precisely my point. Why bend the rules that are quite clear in three different places when there is an alternative remedy? In fact, a few different alternative remedies built into the code. I see my time is up. If the court would indulge, I'd like to say a couple more words about 1328 and payments that are made, quote, under the plan. But I understand my time is up and happy to rest at this point. Appreciate that, Mr. Sutter. Why don't you take an extra minute? Thank you, Judge. There's this notion that there is no time limit in 1328 A. And I think that needs to be considered in context with the other temporal limits in the plan. In Chapter 13, the way that we see it, there is a before, a during and an after temporal component for Chapter 13 plans. 1322 is is captioned as the contents of a plan. And 1322, when defining the contents of a plan, say that it may not exceed five years. 1325 also has a temporal component. It talks about confirming a plan. And there is a five year plan period specified in 1325. It's called the commitment period. And then finally, there's an after. There's 1329, which says you can modify a plan. And you modify a plan when there is a change up or down in the payment amount or a change up or down in the time amount. So if you want to pay off a plan early and you're going to pay everyone, that would ordinarily be a good thing. You still have to request permission. That's the modification by definition of the plan. So whether you increase or decrease the amount or whether you increase or decrease the time, that is a modification of the plan. So the code provides before, during and after confirmation of a plan. Modifications are, in fact, modifications, whereas dealing with here with Miss Kinney isn't a modification. It really is just a remedy. OK, you've reached the plan. What are we going to do about it? And that's that. And we know that the bankruptcy provisions are equitable in nature. And so we've got equity to take into account. Understood, Your Honor. But there there can and should be hard deadlines. And Judge Brown cited some of the reasons for that. If you tell if you tell debtors that it's not a hard deadline, they're going to go past that deadline and they're going to do what happens here. If if you have a situation like the class case that shows the slippery slope, there was someone who made all of their payments on time. And now you've got a different factual pattern in this case where there was a material default one month, two months, three months, four months, et cetera. And that's in that same analysis is coming to bear in this case saying, well, I still want a completion discharge, even though before, during and after the code says I have to have those payments to be under the plan. Those payments have to be within five years. That's sending the wrong message to debtors. Would relief under 1328 be a discharge? Yes, Your Honor. Thank you. Judge, did you have any follow up questions? No, I'm fine. Okay. Thank you, Mr. Burkett. I think I gave you an extra minute. Yes, Judge. And thank you. I appreciate it. I'm going to talk as quickly as I can. Long-term debts are never discharged in 1328. HSBC has all kinds of safeguards in place. By the time of October 2018, she was only two months behind at the end of the plan. I realize she went beyond that. A few words about HUMES, if I might. It was published in 2018, January. I recently shepherdized it. In the three years since it was published, it has absolutely no support throughout this country. It's cited sparingly. It's not cited with approval. And if I might just look at HSBC's no quarter, no leniency, slippery slope argument, it tries to distinguish the Klaus case where they were behind on their payments at the very tail end of the plan. So I struggle to reconcile the argument that there's no quarter, no mercy, no slippery slope, no ad hoc decisions. What? Unless they missed a payment that was imposed by the Chapter 13 trustee. So I don't get the we either there is no recourse, there's no quarter, or there is. But I think in this case the de minimis default was just that. So I appreciate the court's time. Thank you, Judge Ida or Judge Abel. Do you have any questions for Mr. Birkin? I'm good, thank you. All right, thank you, Mr. Siler and Mr. Birkin. Both of you, your briefs I thought were first rate. Your arguments today were first rate. Both of you were very, very helpful to us. It's a very difficult issue.